Slip Op. 18-59

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| VINH HOAN CORPORATION ET AL., <br><br> **Plaintiff and Consolidated Plaintiffs,** <br><br> and <br><br> **BINH AN SEAFOOD JOINT STOCK COMPANY,** <br><br> **Plaintiff-Intervenor,** <br><br> v. <br><br> **UNITED STATES,** <br><br> **Defendant,** <br><br> and <br><br> **CATFISH FARMERS OF AMERICA ET AL.,** <br><br> **Defendant-Intervenors and Consolidated Defendant-Intervenors.** | **Before: Claire R. Kelly, Judge** <br><br> **Consol. Court No. 13-00156** |

## OPINION

[Sustaining the U.S. Department of Commerce's third remand determination in the eighth antidumping duty administrative review of certain frozen fish fillets from the Socialist Republic of Vietnam.]

Dated: May 24, 2018

Matthew Jon McConkey, Mayer Brown LLP, of Washington, DC, argued for Plaintiff and Defendant-Intervenor Vinh Hoan Corporation.

Jordan Charles Kahn, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Washington, DC, argued for Consolidated Plaintiff Anvifish Joint Stock Company and Consolidated Plaintiff and Defendant-Intervenor Vietnam Association of Seafood Exporters and Producers.

<u>Robert George Gosselink</u> and <u>Jonathan Michael Freed</u>, Trade Pacific, PLLC, of Washington, DC, for Consolidated Plaintiff Vinh Quang Fisheries Corporation.

<u>John Joseph Kenkel</u>, deKieffer & Horgan PLLC, of Washington, DC, for Consolidated Plaintiff and Plaintiff-Intervenor Binh An Seafood Joint Stock Company.

<u>Jonathan Mario Zielinski</u> and <u>Heather Kay Pinnock</u>, Cassidy Levy Kent (USA) LLP, of Washington, DC, argued for Consolidated Plaintiff and Defendant-Intervenor Catfish Farmers of America; Alabama Catfish Inc. d/b/a Harvest Select Catfish, Inc.; America's Catch; Heartland Catfish Company; Magnolia Processing, Inc. d/b/a Pride of the Pond; and Simmons Farm Raised Catfish, Inc.  On the brief was <u>Nazakhtar Nikakhtar</u>.

<u>Kara Marie Westercamp</u>, Trial Attorney, U.S. Department of Justice, Commercial Litigation Branch – Civil Division, of Washington, DC, argued for Defendant.  With her on the brief were <u>Chad A. Readler</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director.  Of Counsel on the brief was <u>Kristen McCannon</u>, Attorney, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement and Compliance, of Washington, DC.  Also appearing as Of Counsel was <u>David W. Richardson</u>, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Kelly, Judge:   Before the court is the U.S. Department of Commerce's ("Department" or "Commerce") third remand determination in the eighth antidumping duty ("ADD") administrative review of certain frozen fish fillets from the Socialist Republic of Vietnam ("Vietnam"), filed pursuant to the court's order in <u>Vinh Hoan Corporation v. United States</u>, 41 CIT __, 234 F. Supp. 3d 1332 (2017).  <u>See</u> Final Results of Redetermination Pursuant to <u>Vinh Hoan Corporation et al. v. United States</u>, Consol. Court No. 13-00156, Slip Op. 17-00081 (July 10, 2017), Sept. 22, 2017, ECF No. 223 ("<u>Third Remand Results</u>"); <u>see also</u> <u>Vinh Hoan Corporation v. United States</u>, 41 CIT __, __, 234 F. Supp. 3d 1332, 1344 (2017) ("<u>Vinh Hoan III</u>").

The court remanded Commerce's final determination and first and second remand determinations on the issue of calculating a surrogate value for respondent Vinh Hoan Corporation's ("Vinh Hoan") fish oil byproduct in this review.  <u>See Vinh Hoan III</u>, 41 CIT

at __, 234 F. Supp. 3d at 1341–45; <u>Vinh Hoan Corporation v. United States</u>, 40 CIT __,

__, 179 F. Supp. 3d 1208, 1222–24 (2016) ("<u>Vinh Hoan II</u>"); <u>Vinh Hoan Corporation v.</u>

<u>United States</u>, 39 CIT __, __, 49 F. Supp. 3d 1285, 1321–22 (2015) ("<u>Vinh Hoan I</u>");

<u>Certain Frozen Fish Fillets From [Vietnam]</u>, 78 Fed. Reg. 17,350 (Dep't Commerce Mar.

21, 2013) (final results of ADD administrative review and new shipper review; 2010–

2011), <u>as amended</u> 78 Fed. Reg. 29,323 (Dep't Commerce May 20, 2013) and

accompanying Certain Frozen Fish Fillets from [Vietnam]: Issues and Decision Mem. for

the Final Results of the Eighth Admin. Review and Aligned New Shipper Reviews, (Mar.

13, 2013), ECF No. 27-3 ("Final Decision Memo").  The court ordered that, on third

remand, Commerce must further explain or reconsider its decision to construct a value

for respondent Vinh Hoan's fish oil byproduct rather than to select the best surrogate

value for fish oil from the values placed on the record.  <u>Vinh Hoan III</u>, 41 CIT at __, 234

F. Supp. 3d at 1342–45.

On third remand, Commerce further explains its determination to construct a

surrogate value price for Vinh Hoan's fish oil, and provides further explanation as to why

that method is reasonable based on the record and why the resulting value constitutes

the best available information for valuing the fish oil byproduct.  Commerce has complied

with the court's remand order in <u>Vinh Hoan III</u>, Commerce's explanation is reasonable,

and its findings are supported by substantial evidence.  Accordingly, the <u>Third Remand</u>

<u>Results</u> are sustained.

## BACKGROUND

The court assumes familiarity with the facts of this case as discussed in the three prior opinions, see Vinh Hoan III, 41 CIT at __, 234 F. Supp. 3d at 1334–37; Vinh Hoan II, 40 CIT at __, 179 F. Supp. 3d at 1213–15; Vinh Hoan I, 39 CIT at __, 49 F. Supp. 3d at 1290–91, and here recounts the facts relevant to the court's review of the Third Remand Results.

In the final determination, Commerce selected Indonesian import data under HTS 1504.20.9000 as the best available information to value Vinh Hoan's fish oil byproduct in this review.  See Final Decision Memo at 36–39.  Commerce explained that it "harbor[ed] concerns" that the HTS category may be "overly broad" because it included values for both refined and unrefined fish oil, and Vinh Hoan's byproduct is solely unrefined fish oil. Id. at 38.  To address its concern about overbreadth, Commerce "capped" the HTS value at a value for unrefined fish oil, calculated using Vinh Hoan's factor of production ("FOP") data.  Id.  In Vinh Hoan I, Defendant requested remand for Commerce to reconsider the valuation of Vinh Hoan's fish oil byproduct, on the grounds that Commerce had used its capping methodology for the first time in the final determination and accordingly had not had the opportunity to address, at the agency level, the parties' arguments related to this methodology.  See Def.'s Resp. Pls.' Mots. J. Agency R. at 79–80, May 22, 2014, ECF No. 78.  The court granted the request for remand.  Vinh Hoan I, 39 CIT at 1321, 49 F. Supp. 3d at 1321–22.

On first remand, Commerce continued to "cap" Indonesian import data for HTS 1504.20.9000 at a value representative of Vinh Hoan's fish oil, derived from a build-up of

FOPs used to produce unrefined fish oil.  See Final Results of Redetermination Pursuant to Vinh Hoan Corporation et al. v. United States, Consol. Court No. 13-00156, Slip Op. 15-16 (Feb. 19, 2015) at 78–82, Aug. 12, 2015, ECF No. 136-1.  Commerce explained that such a cap was warranted because the import value was greater than the value for whole fish, the main input, and "[i]t would be illogical to value an unrefined by-product like fish oil at a value greater than that of the main input, a value that also approaches that of the finished product, frozen fish fillets."  Id. at 80.

In Vinh Hoan II, the court determined that what Commerce referred to as a "cap" of the Indonesian data was actually "a rejection of the import data in favor of a constructed value."  Vinh Hoan II, 40 CIT at __, 179 F. 3d at 1222.  The court stated that, until Commerce acknowledged that it was actually constructing a value rather than capping an surrogate value from an existing data source, the court could not review whether Commerce's selection of the Indonesian import data was reasonable because it was not clear whether and how Commerce actually valued Vinh Hoan's fish oil byproduct using the Indonesian import data.  Id., 40 CIT at __, 179 F. 3d at 1224.  The court noted that,

> [a]lthough the court cannot say Commerce unreasonably determined that Vinh Hoan's fish oil is a low value-added product, Commerce has not explained why it is reasonable to depart from its normal methodology of choosing the best [surrogate value] data source to value respondents' fish oil byproduct. Commerce may have good reason to go beyond its stated methodology and construct a value, but Commerce needs to state what it is doing and explain why it is reasonable so that the court may review Commerce's methodology and determination. The court cannot review whether Commerce's choice of Indonesian import data is reasonable when it is unclear how, to what extent, or even if Commerce used Indonesian import data for fish oil in calculating a [surrogate value] for Vinh Hoan's fish oil.

Id. (internal citation omitted).  The court remanded Commerce's determination on this issue for the agency to clarify its methodology.  See id., 40 CIT at __, __, 179 F. Supp. 3d at 1224, 1237–38.

On second remand, Commerce continued to refer to its methodology as a "cap." See generally Final Results of Redetermination Pursuant to Vinh Hoan Corporation et al. v. United States, Consol. Court No. 13-00156, Slip Op. 16-53 (May 26, 2016) at 23–25, 34–37, Jan. 27, 2017, ECF No. 203-1.  Commerce again explained that it had "capped" the HTS 1504.20.9000 data at a value for unrefined fish oil based on Vinh Hoan's own FOP data.  See id. at 23.  Commerce again concluded that the HTS data was not representative of Vinh Hoan's unrefined fish oil byproduct because the HTS value was significantly higher than the main input and includes data values for both refined and unrefined fish oil.  See id. at 24.  Commerce explained that, pursuant to its practice, such a cap was appropriate because the HTS data value was higher than the value of the main input, whole live fish, and a surrogate value priced above the value of the main input would be unreasonable.  Id. at 23–24.  Commerce explained that "the use of the contemporaneous, verified FOP data to produce unrefined fish oil provided by Vinh Hoan, provides a more accurate cap than the [surrogate value] for live whole fish, improves the accuracy of the Department's dumping calculation, and represents the best available information."  Id. at 25.

In Vinh Hoan III, the court again determined that Commerce had still not explained, or even "squarely acknowledged," Vinh Hoan III, 41 CIT at __, 234 F. Supp. 3d at 1342, that it was using a constructed value rather than selecting a surrogate value for fish oil

from the values available on the record.  Id., 41 CIT at __, 234 F. Supp. 3d at 1342–44.

The court explained that, although the agency had determined that Indonesian import

data for HTS 1504.20.9000 constitutes the best available information, "Commerce does

not actually use the import data for HTS 1504.20.9000 as a [surrogate value]," but instead

"builds a constructed value for the fish oil using fish oil FOPs and calls this value a 'cap.'"

Id., 41 CIT at __, 234 F. Supp. 3d at 1342.  The court determined that Commerce had,

without explanation, deviated from its standard practice of choosing "the best existing

surrogate value data source for fish oil from the existing alternative sources" on the

record.  Id.  The court remanded again for the agency to explain why constructing a value

from fish oil FOPs, rather than using alternative available surrogate value data,

constitutes the best available information, or reconsider its determination.  Id., 41 CIT at

__, 234 F. Supp. 3d at 1344.

Commerce issued the Third Remand Results on September 22, 2017.  On third

remand, Commerce acknowledged that it constructed a value for the fish oil surrogate

value rather than capping a surrogate value already on the record.  Third Remand Results

at 8 n.30 ("Based on the Court's ruling, we will no longer refer to the [surrogate value]

used to value fish oil as a cap, but instead as a value the Department calculated to yield

a more reasonable result.").  Commerce explained that constructing a value based on

Vinh Hoan's FOPs provided a more accurate value than any of the other potential

[surrogate values] on record in this review because it was based on "verified information

submitted from Vinh Hoan's own books and records," which is specific, reliable, and

meets the Department's other selection criteria, while the alternative surrogate values that

had been placed on the record did not.  See id. at 9–10.  The agency emphasized that,

in this case, building up a value complies with its statutory mandate to calculate the most

accurate dumping margins possible based on the record.  Id. at 7–8.  For these reasons,

Commerce explained, it found that the calculated fish oil surrogate value constitutes the

best available information on the record of this review.  See id. at 3–14.  Vinh Hoan's

margin calculation did not change on third remand.  Id. at 2.

## JURISDICTION AND STANDARD OF REVIEW

The court continues to have jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the

Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[1] and 28 U.S.C.

§ 1581(c) (2012), which grant the court authority to review actions contesting the final

determination in an administrative review of an antidumping duty order.  "The court shall

hold unlawful any determination, finding, or conclusion found . . . to be unsupported by

substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C.

§ 1516a(b)(1)(B)(i).  "The results of a redetermination pursuant to court remand are also

reviewed 'for compliance with the court's remand order.'"  Xinjiamei Furniture

(Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014)

(quoting Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F.

Supp. 2d 1303, 1306).

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

## DISCUSSION

On third remand, Commerce acknowledges that it constructed a value for Vinh Hoan's unrefined fish oil byproduct to be offset in this review.  See Third Remand Results at 7–9.  Plaintiff continues to challenge Commerce's use of that constructed value, and argues that it was unreasonable to set aside the Indonesian import data for HTS 1504.20.9000 because that data is not overbroad and its value is not unreasonably high. See Pl.'s Comments on the Final Results of Redetermination Pursuant to 3rd Remand at 6–26, Dec. 14, 2017, ECF No. 233 ("Pl.'s Third Remand Comments").   Defendant responds that constructing a value in this case using FOP data reported by Vinh Hoan and verified by Commerce resulted in the most accurate surrogate value available on this record, so it was reasonable for Commerce not to use the Indonesian HTS 1504.20.9000 data.  See Def.'s Resp. Pl.'s Comments on Remand Redetermination at 7–18, Feb. 23, 2018, ECF No. 242 ("Def.'s Third Remand Comments").   Defendant emphasizes that Commerce determined that the import data for the Indonesian HTS 1504.20.9000 category would not be a reasonable surrogate value because the import data is not specific to, and thus not representative of the value of, Vinh Hoan's unrefined fish oil.  See id. at 5–6, 9–13, 19–20.

In non-market economy cases, Commerce obtains the normal value of the subject merchandise by adding the value of the FOPs used to produce the subject merchandise together with "an amount for general expenses and profit plus the cost of containers, coverings, and other expenses."  19 U.S.C. § 1677b(c)(1).  Commerce offsets that figure with the production costs of any byproducts generated during the production process that

the respondent sold.  <u>See</u> Final Decision Memo at 34.  Commerce values the byproduct

offset and other FOPs using "the best available information regarding the values of such

factors in a market economy country or countries. . . ."  19 U.S.C. § 1677b(c)(1).

Commerce's methodology for selecting the best available information evaluates data

sources based upon their: (1) specificity to the input; (2) tax and import duty exclusivity;

(3) contemporaneity with the period of review; (4) representativeness of a broad market

average; and (5) public availability.  Final Decision Memo at 11; <u>see also</u> Import Admin.,

U.S. Dep't Commerce, <u>Non-Market Economy Surrogate Country Selection Process</u>,

Policy Bulletin 04.1 (2004), <u>available at</u> http://enforcement.trade.gov/policy/bull04-1.html

(last visited May 21, 2018).  Commerce's practice for selecting the best available

information to value individual FOPs favors selecting a data source that satisfies the

breadth of its selection criteria where possible.  <u>See</u> Final Decision Memo at 11.  Although

Commerce has discretion to decide what constitutes the best available information, <u>see</u>

<u>QVD Food Co. v. United States</u>, 658 F.3d 1318, 1323 (Fed. Cir. 2011), Commerce must

ground its selection of the best available information in the overall purpose of the ADD

statute, calculating accurate dumping margins.  <u>See</u> <u>Shakeproof Assembly Components,</u>

<u>Div. of Illinois Tool Works, Inc. v. United States</u>, 268 F.3d 1376, 1382 (2001); <u>see also</u>

<u>Lasko Metal Prods., Inc. v. United States</u>, 43 F.3d 1442, 1443 (Fed. Cir. 1994) ("[T]here

is much in the statute that supports the notion that it is Commerce's duty to determine

margins as accurately as possible, and to use the best information available to it in doing

so."); <u>Rhone Poulenc, Inc. v. United States</u>, 899 F.2d 1185, 1191 (Fed. Cir. 1990).

Here, Commerce deviates from its standard methodology of selecting an already-established value from sources placed on the record.   Commerce explains that this decision is, however, not a deviation from its overall practice "to follow [its] statutory mandate to select [surrogate values] from the best available information," which Commerce emphasizes it has done here by constructing a value using the FOPs placed on the record by Vinh Hoan.   Third Remand Results at 7–8.   Commerce explains that, because there were no reasonable established surrogate values available, constructing a value using the respondent's own FOP data is preferable in this case as it will result in a more accurate value for the fish oil byproduct.   See id. at 7–10.   Commerce states:

> The record of this review contained additional information beyond the sources proffered by the interested parties concerning fish oil, specifically, all FOPs consumed by Vinh Hoan to produce fish oil. Because this additional information was on the record, we could evaluate whether this information could credibly be used to value fish oil.  We reiterate that we have calculated surrogate values using record information in other cases where the record contains the requisite information to do so and the record information represents the best available information.

Id. at 8.  On this record, Commerce's decision is reasonable.

Commerce explains that a constructed value would achieve a more accurate surrogate value than the existing values from sources placed on the record.   Third Remand Results at 9–10.  There were two potential surrogate values placed on the record in this administrative review: a price quote for fish oil from an Indonesian company and GTA import data for Indonesian HTS category 1504.20.9000.   Id. at 4–7.   On third remand, Commerce reexamined both values to determine whether either would satisfy the standard selection criteria and accordingly be a reasonable surrogate value.   See id. Regarding the price quote, Commerce determined that it would not be a reasonable

surrogate value because it met only one of the five criteria – public availability – and that it was also unreliable.  Id. at 4–6.

Regarding the HTS data, Commerce determined that, while satisfying the other four criteria, the data was not specific to Vinh Hoan's unrefined fish oil because HTS category 1504.20.9000 covers both refined and unrefined fish oil, such that the value of the import data is not representative of Vinh Hoan's fish oil.  Third Remand Results at 6. Commerce determined that the data within HTS 1504.20.9000 is not "sufficiently representative of Vinh Hoan's fish oil," because that HTS category covers "unrefined fish oil that is packaged and containerized for international shipment, as well as high value refined fish oil containing Omega-3 fatty acids," in addition to unrefined, unpackaged fish oil such as Vinh Hoan's.  Id.  Commerce explained that this lack of specificity of the HTS import data is concerning and significant on these facts, where the import data value is high relative to the main input, whole, live fish.  Id. at 7.  Given the price disparity between the HTS data and the main input, Commerce determined that the HTS data is more representative of refined than unrefined fish oil.[2]  See id.  Thus, Commerce concluded

---

[2] Commerce also emphasized that the surrogate value derived from the Indonesian HTS 1504.20.9000 data would exceed the value of the main input and of the subject merchandise, which would be an unreasonable result for this byproduct.  Third Remand Results at 7.  In response, Plaintiff argues that, in this case, it is not unreasonable for the HTS value to exceed the value of the main input (whole, live fish) because more fish are required to make one kilogram of fish oil than one kilogram of fish.  See Pl.'s Third Remand Comments at 17–18.  As an initial matter, Defendant contends that this argument was not exhausted before the agency.  Def.'s Third Remand Comments at 17.  Plaintiff responds that it has consistently argued in these proceedings that there is not a rational connection between the value of a live fish and the byproduct it is producing.  See Oral Arg. at 00:13:51–00:18:25, Apr. 11, 2018, ECF No. 262.  Nevertheless, Plaintiff's argument is unpersuasive.  Plaintiff argues that "the fish oil value that will actually be used for purposes of deducting the byproduct offset is not higher than the value of the main input,"

(footnote continued)

that the import data for HTS 1504.20.9000 is "overly broad and not specific to the low value, unrefined fish oil produced by Vinh Hoan[.]"  Id. at 10.

The record supports Commerce's determination.  Commerce explained that "Vinh Hoan's unrefined and low value fish oil is dissimilar to much of the fish oil covered" by the heading.  Id.  Record evidence indicates that Vinh Hoan's byproduct is unrefined fish oil. See id. at 6 (citing Commerce Mem. re: Verification of the Sales and [FOP] Response of Vinh Hoan Corporation, PD 393, bar code 3110870-01 (Dec. 14, 2010)).[3]  Commerce concluded that, because Vinh Hoan's fish oil is unrefined and of lower value, the Indonesian HTS 1504.20.9000 data would constitute an unrepresentative surrogate value.  Id. at 7, 9–10.  It is reasonable for Commerce to determine that, on this record, the surrogate value that results from the use of data from HTS category 1504.20.9000 is not representative of the value of Vinh Hoan's byproduct because many of the products covered by that category are not sufficiently similar to Vinh Hoan's unrefined fish oil.  The agency therefore constructed a value using Vinh Hoan's own reported FOP data, which

---

because the correct inquiry is not the value of the byproduct but "the value applicable to the amount of fish oil obtained from the FOPs used to obtain 1 kg of the subject merchandise, which will only be a fraction of $3.10/kg."  Pl.'s Third Remand Comments at 18.  Even accepting Plaintiff's argument as correct, the argument by itself does not undermine Commerce's justification for rejecting the HTS import data as unrepresentative and overbroad in light of the fact that Vinh Hoan's byproduct is low value, minimally processed, unpackaged, unrefined fish oil. Commerce did not determine that the value was inappropriate simply because its value was greater than the main input; instead, Commerce found the data inappropriate because of the high value in combination with the fact that the heading contained refined fish oil where Vinh Hoan's fish oil is unrefined.  On these facts, Plaintiff has not demonstrated that Commerce's determination to use the constructed FOP value is unreasonable.

[3] On June 19, 2013, Defendant filed on the docket the indices to the public and confidential administrative records; these indices are located on the docket at ECF No. 27.  See Admin. Index, June 19, 2018, ECF No. 27.

it considered would result in a more accurate value.  Id. at 9–10.  On this record Commerce's determination is reasonable.

Commerce has explained why it deviated from its usual practice and constructed a value using Vinh Hoan's FOP data in this review, and the method used by the agency to construct a value in this case is reasonable.  Commerce used the respondent's own reported FOP data to build up a price that reflects the value of that respondent's fish oil byproduct.  Third Remand Results at 7–10.  These FOPs were provided by the respondent and verified by the Department.  Id. at 9.

Plaintiff contends that Vinh Hoan's unrefined fish oil is a "value-added product," such that a surrogate value (here, the HTS import data) that exceeds the value of the main input is not an unreasonable category with which to value the byproduct.  Pl.'s Third Remand Comments at 18–23.  Defendant contends that, despite this minimal further processing, it would be unreasonable for the value of the fish oil to exceed that of the main input.  Def.'s Third Remand Comments at 16–17.  Whether the product is value-added does not undermine Commerce's reasonable determination that the HTS value covering "unrefined fish oil that is packaged and containerized for international shipment, as well as high value refined fish oil containing Omega-3 fatty acids," in addition to unrefined, unpackaged fish oil such as Vinh Hoan's, is not specific to Vinh Hoan's fish oil. Third Remand Results at 6.

Finally, Plaintiff argues that Commerce's determination on third remand that Indonesian import data for HTS category 1504.20.9000 is not specific to Vinh Hoan's fish oil byproduct is not supported by the agency record because it is inconsistent with the

agency's prior determinations in these proceedings that the HTS import data was specific.

See Pl.'s Third Remand Comments at 5–6, 15–17.   Commerce explained in the third

remand that it in fact had expressed concern early on in the proceedings regarding the

specificity of the HTS import data: "[a]s stated in the [final determination], while the

Indonesian HTS 1504.20.9000 is sufficiently specific, the HTS may contain refined fish

oil which is not sufficiently similar to the fish oil by-product."   Third Remand Results at 13.

Although the third remand may have been the first time that the agency explicitly stated

that the HTS import data was not specific to Vinh Hoan's unrefined fish oil, throughout

these proceedings Commerce consistently expressed concern that the HTS data was

"overly broad," which was the reason that the agency decided to "cap" the import value

at a value more representative of unrefined fish oil.   See Final Decision Memo at 38.

Indeed, in the final determination, Commerce stated that, because Vinh Hoan's fish oil is

unrefined and unpackaged,

> we harbor concerns that the HTS 1504.20.9000 used in the Preliminary
> Results may be an overly broad HTS category in which to value the
> respondents' fish oil, given that by its terms it may include refined fish oil.
> Nevertheless, we will continue to value fish oil using the Indonesian HTS
> 1504.20.9000 because by its terms it similarly encompasses unrefined fish
> oil. However, we will cap the price of HTS 1504.20.9000 at the calculated
> value of the FOPs and ratios used by Vinh Hoan to make fish oil, i.e., fish
> waste, labor and energy, plus surrogate ratios, to ensure that it is a fully-
> loaded fish oil value.

Id.  This passage clearly reflects a concern about the specificity of the data, which formed

the basis for Commerce's decision to calculate a value more representative of the value

of the respondent's fish oil byproduct.   Accordingly, Plaintiff's argument that Commerce's

determination on third remand that the HTS import data is not specific is inconsistent with

prior findings on the record is unpersuasive.

## CONCLUSION

For the foregoing reasons, the <u>Third Remand Results</u> in Commerce's eighth

antidumping duty administrative review of certain frozen fish fillets from the Socialist

Republic of Vietnam comply with the court's order in <u>Vinh Hoan III</u>, 41 CIT at __, 234 F.

Supp. 3d at 1344, are supported by substantial evidence, and are in accordance with law.

Therefore, the <u>Third Remand Results</u> are sustained.  Judgment will enter accordingly.


                                                             /s/ Claire R. Kelly
                                                            Claire R. Kelly, Judge

Dated: May 24, 2018
          New York, New York